UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BOBBY KEITH WATSON,

    *Plaintiff*,

v.

U.S. DEPARTMENT OF JUSTICE, *et al.*,

    *Defendants.*

No. 18-cv-1645 (DLF)

## MEMORANDUM OPINION

Bobby Keith Watson, acting pro se, brings this lawsuit against the Department of Justice, the U.S. Attorney's Office for the Eastern District of Tennessee, and the Federal Bureau of Investigation (FBI) under the Freedom of Information Act, 5 U.S.C. § 552 *et seq.* (FOIA). Compl., Dkt. 1. Before the Court is Watson's Motion to Show Cause, Dkt. 30, which, along with Watson's premature Motion for Summary Judgment, Dkt. 13, the Court construes as a motion for summary judgment. Also before the Court is the defendants' Motion to Dismiss, Or in the Alternative, Motion for Summary Judgment, Dkt. 36, which the Court considers as a motion for summary judgment. For the reasons that follow, the Court will deny Watson's motion and grant the defendants' motion.

### I.   BACKGROUND

In December 2011, Watson submitted a FOIA request to the FBI. *See* Defs.' Statement of Undisputed Material Facts ¶ 5, Dkt. 36. The FBI informed Watson that his request did not contain enough information for an accurate search. *Id.* ¶ 6. It also provided follow-up steps for Watson to complete his request. *Id.* In response, Watson provided the FBI with the information it needed to complete the search. *Id.* ¶ 7. The FBI then began searching its Central Records

System (CRS) in accordance with Watson's request. *Id.* In June of 2012, the FBI informed Watson that it had reviewed over 250 pages and would release 111 of them. *Id.* ¶ 8. The rest would be withheld under various statutory exemptions. *Id.*

In September 2015, Watson submitted a FOIA request to the U.S. Attorney's Office for the Eastern District of Tennessee. *See id.* ¶ 1. He sought documents related to his prosecution in that district. *Id.* The U.S. Attorney's Office then forwarded the request to the Executive Office for United States Attorneys (EOUSA), as required by Department of Justice policy. *Id.* The EOUSA then asked the U.S. Attorney's Office to conduct a search responsive to Watson's request. *Id.* ¶ 2. The U.S. Attorney's Office conducted the search, and the EOUSA provided a final response to Watson in December of 2016. *Id.* The EOUSA's response informed Watson of his right to administratively appeal the decision, yet he did not do so. *Id.* ¶ 4; *see also* Pl.'s Mot. for Summ. J. at 20–21 (Attach. 1).

Also in December 2016, the EOUSA referred 27 pages of FBI documents from the EOUSA back to the FBI for it to make its own disclosure determination. Defs.' Stmt. of Undisputed Material Facts ¶ 10. The FBI then told Watson that all of the referred documents had already been released to him in the course of Watson's several previous requests over the years. *Id.* ¶ 11.

In March 2017, Watson administratively appealed the FBI's decision to the Office of Information Policy. *Id.* ¶ 12. The Office of Information Policy affirmed the FBI's decision that all responsive documents had already been released to Watson. *Id.* ¶ 13. It further advised Watson that he could request duplicate copies of these already-released documents from the FBI, should he need them. *Id.*

About a year later, Watson brought this lawsuit. *Id.* ¶ 14. The FBI then re-reviewed the documents referred from the EOUSA and released ten new pages of non-exempt information. *Id.* ¶ 15. It also re-reviewed the 251 pages of FBI records and released four new pages of non-exempt material (in addition to re-releasing the 111 pages it previously provided to Watson). *Id.* ¶ 16.

In this suit, Watson moved for summary judgment before the defendants had finished their production of documents. Pl.'s Mot. for Summ. J. The Court denied that motion as premature and advised Watson that he could file a motion for summary judgment at a later time. *See* Minute Order of Apr. 25, 2019. After that, the defendants informed the Court that they had been unable to reach Watson. *See* Defs.' August 29, 2019 Status Report, Dkt. 22; Defs.' Mot. for Leave to File Status Report, Dkt. 23. The Court set a deadline for Watson to show cause why the case should not be dismissed for failure to prosecute. Minute Order of Oct. 15, 2019. After Watson missed that deadline, the Court dismissed this case. Order, Dkt. 24. Watson later filed a change of address and made a motion to alter the judgment, which the Court granted. *See* Pl.'s Mot. to Alter J., Dkt. 28. Watson again missed the filing deadline, and the Court ordered him to show cause why the case should not be dismissed for a second time. *See* Minute Order of Jan. 31, 2020. He filed a motion to show cause which the Court construed as a motion for summary judgment incorporating his earlier, untimely motion for summary judgment. *See* Minute Order of Feb. 27, 2020. The defendants then cross-moved for summary judgment. *See* Defs.' Mot. for Summ. J. The Court warned Watson, pursuant to *Fox v. Strickland*, 837 F.2d 507 (D.C. Cir. 1988), of the consequences of failing to respond to the defendants' arguments and factual assertions under the Federal Rules of Civil Procedure and the Local Rules. *See* Minute Order of July 20, 2020. The two motions for summary judgment are now ripe for the Court's review.

## II.     LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Materiality is, of course, a function of the applicable legal standard, which in this case is that an agency responding to a FOIA request must conduct a search reasonably calculated to uncover all relevant documents, and, if challenged, must demonstrate beyond material doubt that the search was reasonable."  *Kowalczyk v. DOJ*, 73 F.3d 386, 388 (D.C. Cir. 1996) (internal quotation marks omitted).  All facts and inferences must be viewed in the light most favorable to the requester and the agency bears the burden of showing that it complied with FOIA.  *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009).

"The system of disclosure established by the FOIA is simple in theory.  A federal agency must disclose agency records unless they may be withheld pursuant to one of the nine enumerated exemptions listed in [5 U.S.C.] § 552(b)."  *DOJ v. Julian*, 486 U.S. 1, 8 (1988).  "[F]ederal courts . . . rely on government affidavits to determine whether the statutory obligations of the FOIA have been met."  *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982) (per curiam).  The agency's affidavit is accorded a presumption of good faith, *SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), and "summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith," *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013) (alterations and internal quotation marks omitted).  Courts in this jurisdiction recognize that "the vast majority of FOIA cases can be resolved on summary

judgment." *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

III.     **ANALYSIS**

FOIA creates a framework of presumptions and exemptions.  If certain conditions are met, it is presumed that the request for documents must be granted.  Specifically, the Act provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person."  5 U.S.C. § 552(a)(3)(A).  That presumption is overcome, though, if certain exemptions are satisfied.  *See id.* §§ 552a(j)(2), (k)(2), 552(b).  In that case, an agency may withhold the records. *Id.*

A.     **Exhaustion of Administrative Remedies**[1]

"[E]xhaustion of administrative remedies is a mandatory prerequisite to a lawsuit under FOIA, which means that a requester under FOIA must file an administrative appeal within the

---

[1] A threshold question is whether the exhaustion question is properly considered under the summary judgment standard.  Both parties style their motions as motions for summary judgment (for the defendants, in the alternative).  That said, "the D.C. Circuit has directed that the Court address [] exhaustion arguments under Federal Rule of Civil Procedure 12(b)(6)."  *Acosta v. FBI*, 946 F. Supp. 2d 47, 49–50 (D.D.C. 2013).  *See Hidalgo v. FBI*, 344 F.3d 1256, 1260 (D.C. Cir. 2003).  This becomes complicated when, as here, parties reference material outside of the pleadings.  *See Acosta*, 946 F. Supp. 2d at 49–50; *see* Defs.' Mot. (attaching fifteen exhibits); Defs.' Mot. for Summ. J. at 6 (citing the declaration of Natasha Hudgins, Dkt. 36-14, in the exhaustion argument).  When "the defendant's motion references matters outside the pleadings, a court must treat the motion as one for summary judgment, not as one for dismissal based on failure to state a claim under Rule 12(b)(6)."  *Pinson v. U.S. Dep't of Justice*, 61 F. Supp. 3d 164, 172–73 (D.D.C. 2015); *see also* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); *Yates v. Dist. of Columbia*, 324 F.3d 724, 725 (D.C. Cir. 2003) (per curiam).  For this reason, the Court must treat the defendants' motion as a motion for summary judgment.  In any case, "the result would be identical" under either standard.  *Acosta*, 946 F. Supp. 2d at 50.

5

time limit specified in an agency's FOIA regulations or face dismissal of any lawsuit complaining about the agency's response." *Wilbur v. CIA*, 355 F.3d 675, 676 (D.C. Cir. 2004) (per curiam) (internal quotation marks omitted). "[T]he FOIA's administrative scheme favors treating failure to exhaust as a bar to judicial review." *Id.* at 677 (internal quotation marks omitted) (citing *Hidalgo v. FBI*, 344 F.3d 1256, 1259 (D.C. Cir. 2003)).

It is undisputed that Watson did not file an administrative appeal after the EOUSA denied his request. *See* Defs.' Stmt. of Undisputed Material Facts ¶ 4 (citing Hudgins Decl. ¶ 9); *see generally* Pl.'s Stmt. of Undisputed Material Facts, Dkt. 38 (not meaningfully disputing this fact). Watson insists that he "exhaust[ed] all of the administrative remedies," *id.* ¶ 12, but does not provide any record support to indicate that he filed an administrative appeal of the EOUSA's decision, *see id.* Because Watson failed to provide the EOUSA with the opportunity to make a final judgment, "summary judgment on this [claim] is consistent with the purposes of exhaustion and FOIA's detailed administrative scheme." *Porter v. CIA*, 778 F. Supp. 2d 60, 68 (D.D.C. 2011). Watson did exhaust administrative remedies against the FBI, however, *see* Pl.'s Stmt. of Undisputed Material Facts ¶ 9, so the Court proceeds to the merits of those claims.

**B.  The Adequacy of the Search**

To survive a motion for summary judgment, an agency "must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Reporters Comm. for Freedom of the Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017) (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). The adequacy of a search "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). "[T]he issue to be resolved is not whether there might

6

exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Id.* at 1485 (emphasis in original); *see also SafeCard*, 926 F.2d at 1201.

Courts "rely on government affidavits to determine whether the statutory obligations" have been satisfied. *Perry*, 684 F.2d at 126. These affidavits are accorded a presumption of good faith. *See SafeCard*, 926 F.2d at 1200. "[S]ummary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Judicial Watch*, 726 F.3d at 215 (internal quotation marks omitted). "Once the agency has provided a reasonably detailed affidavit describing its search, the burden shifts to the FOIA requester to produce 'countervailing evidence' suggesting that a genuine dispute of material fact exists as to the adequacy of the search." *Hunton & Williams LLP v. EPA*, 248 F. Supp. 3d 220, 236 (D.D.C. 2017) (citing *Morley v. CIA*, 508 F.3d 1108, 1116 (D.C. Cir. 2007)).

The FBI provided the declaration of Michael Seidel, the Acting Section Chief of the Record/Information Dissemination Section of the Information Management Division of the FBI. Seidel Decl., Dkt. 36-1. Seidel's declaration describes the FBI's Central Record System and accompanying systems in thorough detail. It explains that the CRS is the primary records system and is likely to contain documents responsive to Watson's request. *Id.* ¶ 33. It also provides the specific search terms the FBI used. *Id.* ¶ 32. And it further explains that the FBI located Watson's criminal file and processed those documents in accordance with his request. *Id.*

Thus, the FBI has met its burden of producing a "reasonably detailed affidavit" describing its search process. *See Hunton & Williams LLP*, 248 F. Supp. 3d at 236. In response,

Watson makes arguments as to whether the FBI's reliance on the statutory exemptions was proper—a separate issue from the adequacy of the search. Because Watson has not met his burden of producing "countervailing evidence" to rebut the agency's reasonably specific declaration, any challenge to the adequacy of the FBI's search fails as a matter of law. *See id.*

### C. The Statutory Exemptions

The FBI invoked five exemptions to withhold in part or in full certain material that was responsive to Watson's FOIA request. *See* Defs.' Exemption Application Index, Dkt. 36-13.

#### 1. *Exemptions 6 and 7(C)*

"FOIA Exemptions 6 and 7(C) seek to protect the privacy of individuals identified in certain agency records." *ACLU v. DOJ*, 655 F.3d 1, 6 (D.C. Cir. 2011). Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6), while Exemption 7(C) protects "records or information compiled for law enforcement purposes" that "could reasonably be expected to constitute an unwarranted invasion of personal privacy," *id.* § 552(b)(7)(C).

When an agency invokes both exemptions, as here, courts "focus" on Exemption 7(C) because it "establishes a lower bar for withholding material." *Citizens for Responsibility & Ethics in Washington v. DOJ*, 746 F.3d 1082, 1091 n.2 (D.C. Cir. 2014) (internal quotation marks omitted). In so doing, courts must balance the privacy interests inherent in the records against the public's interest in their disclosure. *Citizens for Responsibility & Ethics in Washington v. DOJ*, 854 F.3d 675, 681 (D.C. Cir. 2017). If the withheld records implicate a substantial privacy interest, the plaintiff "bears the burden of showing (1) that 'the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake,' and (2) that the information [it] seeks 'is likely to advance that interest.'" *Roth v. DOJ*, 642 F.3d 1161, 1175 (D.C. Cir. 2011) (quoting *Nat'l Archives & Records Admin. v.*

*Favish*, 541 U.S. 157, 172 (2004)).  Further, "the only public interest relevant for purposes of Exemption 7(C) is one that focuses on the citizens' right to be informed about what their government is up to."  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007) (internal quotation marks omitted).

      Here, the FBI withheld identifying information that included names, phone numbers, addresses, social security numbers and other personal information of people who assisted in an FBI investigation.  *See* Seidel Decl. at 16 n.9; *id.* ¶¶ 42–55.  These included FBI special agents and staff, informants, people tangentially mentioned, people of investigative interest, local law enforcement employees, and victims.  Seidel Decl. ¶¶ 42–55.  No doubt, significant privacy interests would be implicated in the disclosure of this personal identifying information—to say nothing of the sensitive context in which the information was obtained.  *See SafeCard*, 926 F.2d at 1205–06 (noting the "embarrassment" and "serious reputational harm" that targets of law enforcement investigations, potential defendants, and witnesses would face if personal identifying information were released).

      As for the public interest, the FBI considered whether the information in question would serve the public interest by "shed[ding] light on the FBI's performance of its mission."  *Id.* ¶ 44.  The FBI rightly concluded that it would not.  Personal identifying information of third parties is "simply not very probative of an agency's behavior or performance."  *SafeCard*, 926 F.2d at 1205.  "Indeed, unless there is compelling evidence that the agency denying the FOIA request is engaged in illegal activity, and access to the names of private individuals appearing in the agency's law enforcement files is necessary in order to confirm or refute that evidence, there is no reason to believe that the incremental public interest in such information would ever be significant."  *Id.* at 1205–06.

There is no such "compelling evidence" of illegal activity here. *Id.* Watson claims that "disclosure of the requested [records] could confirm the DOJ's affirmative misconduct in this case or will show how the responsible officials acted negligently or otherwise improperly in the performance of their duties by initiating the criminal proceedings against the Plaintiff without probable cause, pursued baseless and unfounded criminal charges against the Plaintiff without legal justifications, [and] suborned the perjury of both the leading FBI criminal investigator(s) and the leading state criminal investigators for the DOJ in the prosecution of the Plaintiff." *See* Pl.'s Reply at 7, Dkt. 38. But with no "evidence"—let alone "*compelling* evidence"—beyond these conclusory allegations of illegal activity, *see SafeCard*, 926 F.2d at 1205–06 (emphasis added), Watson cannot establish a public interest to overcome the substantial privacy interests at stake. *See Dent v. Exec. Office for U.S. Attorneys*, 926 F. Supp. 2d 257, 269 (D.D.C. 2013) ("It is a FOIA requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant."). For that reason, summary judgment is proper as to Exemptions 6 and 7(C).

        2.    *Exemptions 7(D)-(F)*

The FBI invokes three other law enforcement exemptions, in addition to those described above, to withhold documents in part or in full. Broadly speaking, Exemption 7 protects "records or information compiled for law enforcement purposes," so long as they fall within one of the statute's sub-sections. 5 U.S.C. § 552(b)(7). The FBI properly relied on several sub-sections of Exemption 7.

Exemption 7(D) protects information that "could reasonably be expected to disclose the identity of a confidential source." *Id.* § 552(b)(7)(D). "A source is confidential within the meaning of exemption 7(D) if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred."

*Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (per curiam) (internal quotation marks omitted).  Here, the FBI exempted certain information that could reveal the identity of confidential informants who assisted in an investigation.  *See* Seidel Decl. ¶ 68.  In particular, the FBI withheld "the confidential source file numbers of permanent Confidential Human Sources." *Id.*  Each confidential source file number is unique to one confidential source and used repeatedly to reference him or her.  *Id.* ¶¶ 68–69.  And it is provided "under express assurances of confidentiality."  *Id.* ¶ 68.  Given these facts, the disclosure of the expressly confidential source file numbers "would narrow the possibilities of the informants' true identities," *id.* ¶ 69, and that could "reasonably be expected to disclose the identity of a confidential source," 5 U.S.C. § 552(b)(7)(D).

Exemption 7(E) protects information that "would disclose techniques and procedures for law enforcement investigations or prosecutions . . . if such disclosure could reasonably be expected to risk circumvention of the law."  *Id.* § 552(b)(7)(E).  The FBI invoked this exemption to withhold information about "undercover operations" and "source file numbers," a numbering system for categorizing and assigning priority to various FBI operations.  Seidel Decl. ¶¶ 72–74.  The FBI explained in great detail how public disclosure of this information would "risk circumvention of the law" by revealing non-public investigative details (including the FBI's failures or omissions) to criminals who could then adapt their behavior to avoid detection.  *See id.* ¶¶ 70–77.  For example, "publicizing details concerning unknown FBI undercover investigative techniques and the FBI's operational security methods during these undercover operations" would "have devastating operational consequences."  *Id.* ¶ 73.  "Additionally, releasing non-public FBI file classification numbers would . . . provide criminals and foreign adversaries the ability to discern the types of highly sensitive investigative strategies the FBI is

11

pursuing whenever such file classification numbers are present within these and other sensitive FBI investigative records." *Id.* ¶ 74. Reliance on the exemption was proper.

Exemption 7(F) protects information that "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). The FBI invoked this exemption to protect the names and other identifying information of individuals who might face violent retaliation for their cooperation in the investigation. Seidel Decl. ¶ 79. The FBI explained that these individuals assisted in the investigation of a major drug cartel operation, and those who assist in such investigations often face violent retribution against themselves and their families. *Id.* Thus, release of their identities would "endanger the life or physical safety of an[] individual." 5 U.S.C. § 552(b)(7)(F).

Watson argues that "the U.S. Dept. of Justice has not met its burden of showing that the requested records were complied [sic] for law enforcement purposes and are part of an active on-going investigation that such production of the requested agency records 'could reasonably be expected to interfere with enforcement proceedings.'" Pl.'s Mot. for Summ. J. at 7 (citing 5 U.S.C. § 552(b)(7)(A)). But defendants do not invoke exemption (7)(A), they invoke exemptions (7)(C)-(F), so this argument is of no moment.

### D.   Segregability

Finally, the FBI has satisfied its segregability obligations. FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). An agency may satisfy this obligation by "(1) providing a *Vaughn* index that adequately describes each withheld document and the exemption under which it was withheld; and (2) submitting a declaration attesting that the agency released all segregable material." *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101,

207 (D.D.C. 2013). The segregability requirement does not apply to non-exempt material that is "inextricably intertwined" with exempt material, *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977), and agencies are entitled to a presumption that they disclosed all reasonably segregable material, *Sussman*, 494 F.3d at 1117.

The FBI submitted an Exemption Application Index which catalogs which documents or passages were withheld, the extent to which they were withheld (in full or in part), the exemptions covering the information, as well as a description of why the information was withheld. *See* Defs.' Exemption App. Index; Seidel Decl. ¶ 36 (explaining the index). Further, the Seidel Declaration attests that "[t]he FBI did not withhold any reasonably segregable, nonexempt portions from Plaintiff." *Id.* ¶ 36; *see also id.* ¶ 37 ("The coded, Bates-numbered pages together with this declaration demonstrate that all material withheld by the FBI is exempt from disclosure pursuant to the cited FOIA exemptions, or is so intertwined with protected material segregation is not possible without revealing the underlying protected material."); *id.* ¶ 80 (explaining why certain documents were released in part or withheld in full). Together, these submissions satisfy the FBI's segregability obligations. *See Nat'l Sec. Counselors*, 960 F. Supp. 2d at 207.

## CONCLUSION

For the foregoing reasons, Watson's motion for summary judgment is denied and the defendants' motion for summary judgment is granted. A separate order consistent with this decision accompanies this memorandum opinion.

                                                   _____
                                                   DABNEY L. FRIEDRICH
                                                   United States District Judge

September 10, 2020